### MACK v. MAGNOLIA PETROLEUM CO.
### (TRAVELERS' INS. CO.,
### Intervener). *
### No. 4988.

Court of Appeal of Louisiana. Second Circuit.

April 1, 1935.

Pugh, Grimmet & Boatner and Fred Simon, all of Shreveport, for appellant.

Harry V. Booth, of Shreveport, and J. S. Pickett, of Many, for appellee.

F. G. Thatcher, of Shreveport, for intervener.

MILLS, Judge.

Plaintiff, an experienced tank builder, was the foreman in charge of a tank crew, composed of himself and six workmen, employed by the Cypress Tank Company.

On the afternoon of the 20th day of February, 1933, this crew started erecting a 500-barrel steel tank which its employer had contracted to build for the Magnolia Petroleum Company on a lease in Sabine parish. As there was a lack of storage to take care of the production of a newly brought in oil well, it was a rush job. The tank was bolted, as distinguished from those fastened together by rivets or welding. By suppertime it had been completed, with the exception of putting on the top or deck, which has a diameter of 22 feet and a slope of about a foot from its center to the rim, and is composed of wedge-shaped steel plates about 11 feet long. Their small end is fastened at the apex to a ring, 20 inches in diameter, by a workman who stands within the ring upon an iron ladder supporting it. The large end is secured to the rim. Workmen then bolt the plates together. When the tank crew returned from supper, with the intention of completing the tank that night, they found the vicinity lighted by a number of open, burning gallon cans of crude oil placed about upon the ground by the drilling crew of the Magnolia Petroleum Company, which, independently of the tank crew, was engaged in running a line of pipe from the well to the tank. For night work by the tank crew it is usual for the tank to be lighted up with electric lights. On this occasion the only light specially furnished for the use of the seven-man crew engaged in the particular work of fitting the top pieces and inserting and tightening the innumerable bolts came from three flashlights. When we consider that a part of the crew was on the ground passing up the plates, one man in the ring fastening them at the center, another at the rim and others tightening bolts, it is apparent that this light was far from ample. At the time of the occurrence which gave rise to this suit, about half of the plates had been placed, leaving the other half of the

*Rehearing denied May 2, 1935.

deck open. Plaintiff was facing the open space, engaged in fastening the bolts on the last plates in position. One of his fellow tankmen working on the sloping, greasy deck slipped, his foot struck an open can of burning oil which some one had placed on the deck, knocking it over and causing the flaming fluid to run down beneath plaintiff. In this sudden dangerous emergency plaintiff, in trying to avoid the burning oil, fell or jumped into the tank, receiving serious injuries, for which he is seeking in this tort action to recover damages from the Magnolia Petroleum Company.

Plaintiff's claim is based upon the allegation that the can of oil had been carelessly and negligently placed on the deck by some member of defendant's drilling crew to furnish light for them to insert the end of the line of pipe into the top of the tank; that, because of the slope of the deck and the men working there, the dangerous situation created was, or should have been, known to whoever placed the light. The petition further alleges that plaintiff was unaware that the can had been placed above him and was not prepared to protect himself from the danger. We are not impressed with the force of this latter allegation or the testimony of plaintiff on this point. To our mind, it is too improbable to believe that a foreman, in charge of the crew, on a dark night, on top of a tank in such a restricted space, could be unaware of the placing so near him of an open can of burning oil, which plaintiff thus describes:

"No, there was tanks of oil all around the tank, blazing up three, four or five feet high."

Plaintiff further alleges, in an amended petition, that the erection of bolted steel storage tanks is a distinct business, separate and apart from that of the production and marketing of oil, and that the defendant was not, at the time of the accident, and had never been, engaged in this business.

The defense is:

First, that the can of oil was not placed on the tank by an employee of defendant company, but by an employee of the Cypress Tank Company, with the knowledge and consent and by the instruction of plaintiff.

Second, that the erection of tanks of the character involved herein is a necessary part of defendant's regular business; that it carries in stock the required equipment and employs the necessary personnel to build and erect such tanks, though it sometimes, for convenience, contracts this work; that therefore plaintiff's exclusive remedy is that provided by the Workmen's Compensation Act (No. 20 of 1914, as amended); and that the petition alleging liability in tort states no cause of action.

Third, that, if it should be held that its employees did negligently place the can upon the tank so as to render defendant liable, then, in the alternative, plaintiff is barred from recovery by his contributory negligence in knowingly permitting the can to be placed on the deck and in failing to have it removed or to remove himself from a place of such apparent danger.

Fourth, in the further alternative, that the accident was caused by the negligence of a fellow servant in knocking over the can.

The Travelers' Insurance Company, intervening, shows that plaintiff in this action brought suit for the same cause against his employer, insured by intervener, for compensation under the State Workmen's Compensation Act, which suit was terminated by an agreed settlement made the judgment of the court, wherein plaintiff was granted the lump sum of $3,531.24; that intervener, in addition to this amount, has paid out the further sums of $167.20 medical expenses; $75 doctors' bills, and $400 attorney's fees, for which it should be reimbursed out of any judgment rendered against defendant. The payment of these sums is admitted by stipulation.

There were five men in the Magnolia's drilling crew engaged at the time in laying a 2-inch flow line from the well to the tank. Of these, L. A. Sherman testifies that the line was run to within 17 feet of the tank. At this point a riser was connected to get the elevation to the the top of the tank. To this riser an L was joined, extending over to the tank top, where a nipple was inserted into a hole in the deck and wired down. He says that he personally did the inserting and wiring by a flashlight held by some member of the drilling crew. He says that this final connection was made some time after Mack was hurt and after the top of the tank had been completed, and that at that time there was no can of burning oil on the roof. He says positively that he did not put a can of burning oil on the deck of the tank at any time, and did not see any of the Magnolia crew do so.

J. E. Waters, a second member of the drilling crew, says that at the time of the accident the work on the flow line had not progressed to where the riser was connected; that they were working by the light of the buckets on the ground. He states that neither he nor any member of his crew put the can upon the tank. At this point plaintiff admit-

ted that the rest of the drilling crew would testify substantially the same.

We thus have every member of the Magnolia crew testifying that at the time of the accident their work had not progressed to the point where it was necessary for any of them to go upon the tank; that the insertion of the end of the flow line into the tank top was not made until the tank was completed and after the accident; that at the time of the accident no occasion had arisen for any member of the drilling crew to go on the tank or to require any light there.

The testimony of Mack and his fellow workers is conflicting. Mack says that he was furnished three "Dad's" lanterns or large flashlights which may be set down and which throw a light to the sides. He says that he did not know of the presence of the can until the burning oil flowed under him, and does not know who put it there. In his petition in the compensation suit, Mack alleges, to the contrary, that the can of oil "was being used at the time to illuminate the top of the tank in order that the workmen could carry on the construction of same." In his testimony in that case he says:

"Q. You mean you were burning oil for illumination? A. Yes, sir.

"Q. Your employer furnished you that kind of a light? A. Yes, sir."

J. O. Cassidy, of the Cypress crew, testifies that, when he went up on the tank, he saw a can of oil, slipped, and knocked it over; that the Cypress crew was working by "those little lights, something similar to flashlights." In the former case he testified:

"Q. The oil was burning, of course? A. Yes, sir.

"Q. You all were using that to work by? A. Yes, sir."

H. J. Hatton, another member of the Cypress crew, testifies that, after two or three connecting pieces had been placed on the top, he saw a Magnolia man get up on a box and set the blazing can on the tank. He did not testify in the former case.

For defendant, J. L. Templeton, another of the Cypress crew, testifies that they were using the can of burning oil to work by; that the crew would move it around as they worked; that he does not know who put it on the tank; and that he saw no Magnolia man on the tank.

W. T. Ledbetter, of the Cypress crew, testifies:

"Q. What was used for light to work by? A. Well, they used some buckets of oil and then after a while we had some 'Dad's' lanterns or flashlights.

"Q. Who put the buckets of oil up there? A. I don't know.

"Q. Which gives the most light to work by, the flashlights or the oil can? A. The oil can gives the most light."

He saw no Magnolia man on the tank.

Reuben Field, another of the Cypress crew, testifies:

"Q. What did you use for lights? A. We had one or two little flashlights and we used a can of oil after we started off. We didn't use it to begin with.

"Q. Who put that can of oil up there? A. Well, I don't know. I put one can of oil up there later on, I don't know if it was that one or which one it was.

"Q. Why did you go and get the other can of oil? A. We got out there, and some of us, I guess it was me, asked what we was going to have for light and some of the drilling crew said, 'You can have this can we are using,' and I said, 'that one won't be enough,' and he said, 'if you have another bucket you can go out and get another one,' and I picked up a bucket and got another can of oil."

While the testimony of this witness is far from convincing, it at least does not corroborate plaintiff.

■ From the above it is apparent that, though the burden of proof rests upon plaintiff as to who put the can on the tank, the testimony largely preponderates in favor of defendant. Defendant's position is much more consistent with the proven facts in the case. It is apparent that the Cypress crew, engaged in the careful work of adjusting and securing the deck plates and inserting and tightening the many bolts, had far more need for light than the Magnolia crew working on the simpler job of laying and connecting the flow line. It is admitted that the usual electric bulb lights were missing. Plaintiff's testimony that his crew was using the burning oil to get sufficient light to work by, given in the compensation suit where that question did not involve his interest, is much more probable than his statement in the second suit that he did not even know the can of blazing oil was on the tank. Plaintiff contends that there was an occasion for some member of the Magnolia crew to go up on the tank with the light before making the final connection, in order to measure its height. This is denied by members of the Magnolia crew, who say that the riser was movable, making an exact measurement unnecessary.

It also seems to us that there was no need for a flare on top of the tank in order to measure on its side its height. A tapeline dropped down would be better illuminated by a light on the ground.

As we find that plaintiff has failed to prove the essential fact that the can was placed on the tank by defendant's workmen, it is not necessary to consider the remaining defenses, all of which present serious issues.

The judgment appealed from, in favor of plaintiff in the sum of $12,000 and for intervener as its interest appeared, is clearly erroneous. It is accordingly reversed, and plaintiff's and intervener's demands rejected.